THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
HECTOR JIMINEZ, Appellant.

First Department, March 24, 1981

### APPEARANCES OF COUNSEL

*Steven M. Jaeger* of counsel *(William E. Hellerstein,*
attorney), for appellant.

*Harold Kenneth King, Jr.,* of counsel *(Billie Manning*
and *Timothy J. McGinn* with him on the brief; *Mario
Merola, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

FEIN, J. P.

The issue is whether defendant Hector Jiminez was de-
nied due process and a fair trial by reason of the fact that
the prosecution waited until after defendant introduced
into evidence a written confession of the crime by one Luis
Heredia (Heredia) before disclosing that Heredia was then
in custody and had recanted the confession.

The People's evidence established that defendant and Victor Pagan (Pagan) had engaged in a series of arguments in the street. The arguments continued after defendant had retired to his apartment. Pagan, who was standing in the street, and defendant, who was standing at a window in his apartment, started to trade insults. Also at the window in the apartment were Heredia, defendant's wife Alda Ortiz (Ortiz), and Annette Serrano (Serrano) a friend of defendant and his wife. In response to Pagan's taunts, defendant yelled "I'm going to shoot you". There was evidence that defendant possessed a rifle when he made the threat. The shot that killed Pagan rang out moments later.

The defendant called a series of witnesses, including an investigator, to demonstrate that (1) Heredia had confessed to the killing; (2) his written confession was authentic; and (3) he had disappeared and could not be found. Defendant was permitted to introduce the written confession into evidence and to read it to the jury on the theory that it was a statement against penal interest made by one who was unavailable to testify. Although the prosecution knew and had disclosed to the court that Heredia was then in custody and had recanted, defendant's attorney was not apprised of this until after he had read Heredia's confession to the jury.

Serrano, testifying for defendant, said defendant was not armed at the time of the shooting and that she had seen Heredia before and after the shooting.

Ortiz testified that two weeks later someone anonymously slipped a confession signed by Heredia under her door and that she took the confession to the District Attorney.

Eulogio Cedeno (Cedeno), executive director of the housing project, testified that he recognized Heredia's signature on the confession. Cedeno also testified that a few days after the incident Heredia admitted the shooting. Cedeno said he told Heredia to turn himself in. Cedeno admitted he never notified the police, although Heredia later repeated the oral confession. Zoraida Galindez (Galindez) also testified that Heredia had admitted the shooting. She stated Heredia had been "hanging out" and had asked to

stay in her apartment for a few days after the shooting. Defendant's investigator then testified as to his unsuccessful efforts to locate Heredia. The defense then offered the confession in evidence. It was received without objection and read to the jury.

The confession stated that Heredia had been in the street when he observed "someone" in an apartment arguing with Pagan. Heredia's confession further stated that he retrieved a rifle secreted in the basement and then took up a position on the roof of defendant's building. He then shot at Pagan only to scare him. Heredia later dumped the weapon in the East River.

Only after the confession was introduced was it disclosed to the defense attorney that Heredia had been in custody for at least two days and had recanted the confession in a video taped statement taken by an Assistant District Attorney. Thus, the grounds for admissibility of the confession did not exist at the time it was offered and received in evidence without objection. Heredia was indeed available, although this was not disclosed to defendant's attorney. Earlier during the trial, when the defense attorney indicated that he proposed to offer Heredia's confession in evidence, the District Attorney objected and the court sustained the objection. Although the record is not too clear as to the reasons for such ruling, it is plain that at the time it was made the ruling was improper *(People v Brown,* 26 NY2d 88; *People v Settles,* 46 NY2d 154, 167). It was clear that there was to be evidence as to the authenticity of the confession; it was against Heredia's penal interest and he was unavailable. This is undisputed. The District Attorney withdrew his objection and the court ruled the confession admissible only after Heredia was in custody and had recanted. Thus defendant was in a position where he was to be precluded from introducing the confession in evidence at a time in the trial when it was admissible, and only permitted to introduce it when the conditions for admissibility no longer existed, albeit this was not known by the defense counsel at that time.

The disclosure was not made until after defendant laid an elaborate foundation for the admissibility of the Heredia confession and read it to the jury.

After defendant rested, the prosecution called Heredia as a rebuttal witness. He recanted the confession after conceding he had written and signed it. He asserted that he had been persuaded to do so by Ortiz and Serrano. They convinced him that as a minor he would not be severely punished and that defendant would escape criminal liability.

■ Defendant was denied due process and a fair trial. The failure to disclose that Heredia was in custody and the failure to afford the defense attorney an opportunity to talk to him prior to the introduction of the confession made it possible for the District Attorney to dictate defendant's trial preparation and order of proof.

Had the prosecutor disclosed Heredia's availability, the defense would have had the right to call him as a defense witness. While Heredia might have testified that he did not write the confession or that it was not true, the defense would have been permitted to introduce it into evidence and cross-examine Heredia as an adverse witness (Chambers v Mississippi, 410 US 284, 295-298). The defense might then have been permitted to call the other witnesses to testify as to Heredia's oral confession. He would no longer have been an unavailable declarant (Chambers v Mississippi, supra, at pp 298-301).

Even though the defense might not have called Heredia as a defense witness, counsel, at the very least, was entitled to know of his availability so counsel could interview him prior to completion of the defense case. The failure to disclose that Heredia was in custody prevented defendant's lawyers access to him. Although Heredia could have refused the interview, the defense procedure in trying the case would manifestly have been different. We cannot speculate as to what strategy would have been utilized if Heredia's availability were made known, or whether it would have been successful. The issue does not turn on such considerations. A defendant should have the right fully, freely and properly to prepare his defense (People v Martinez, 15 Misc 2d 821, 824). Fairness and substantial justice required that the information be made known to the defendant. In the absence of such information defendant

proceeded with extensive testimony as a foundation for the introduction of the confession before it was read to the jury.

When Heredia was called as a prosecution witness in rebuttal, it was made to appear that the various witnesses called by the defendant were engaged in some kind of scheme to perpetrate a fraud upon the court. Defendant's position was untenable. It was made so because of the failure to disclose and because of the court's rulings on the admissibility of the confession. When the prosecutor disclosed he would not object to the confession and asked the court to reverse the ruling on the admissibility of the confession, the die was cast. The use of the confession by the defendant was not objected to solely to enable the prosecution to call Heredia as a rebuttal witness to recant and deny his confession. The evidence presented by the defense included testimony as to the authenticity of the confession and the unsuccessful efforts to locate Heredia. Unbeknownst to counsel, the prosecutor had Heredia waiting in the wings to make a dramatic appearance. This led to the implication that the defense had not been straightforward with the jury, as the prosecutor suggested in his summation.

The right to a fair trial is self-standing *(People v Crimmins*, 36 NY2d 230, 238). The defendant was denied a fair trial by reason of the failure to disclose the availability of Heredia. A defendant "is entitled to a fair trial without trickery or overreaching by the prosecution" *(People v Fein*, 18 NY2d 162, 173).

The trial court's charge on reasonable doubt tracks the language found to be error in *People v Lanni* (73 AD2d 538). Although this would not be a ground for reversal because there was no objection, it is added evidence of the denial of a fair trial.

Accordingly, the judgment of the Supreme Court, Bronx County (TYLER, J., at trial and sentence; KLEIMAN, J., at second felony offender hearing), rendered October 27, 1978 convicting defendant after a jury trial of manslaughter in the first degree and sentencing him as a second felony offender to an indeterminate term of imprisonment of 8 to 16 years, should be reversed, on the law and the

facts and as a matter of discretion in the interest of justice, and the action should be remanded for a new trial.

LUPIANO, SILVERMAN, BLOOM and CARRO, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered on October 27, 1978, reversed, on the law and the facts and as a matter of discretion in the interest of justice, and the action remanded for a new trial.